**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FAYETTE MEDICAL CENTER**
1653 Temple Avenue North
Fayette, AL  35555

**D C H REGIONAL MEDICAL CENTER**
809 University Boulevard East
Tuscaloosa, AL 35401

**LOMA LINDA UNIVERSITY MEDICAL CENTER**
11234 Anderson Street
Loma Linda, CA  92354

**ROCKVILLE GENERAL HOSPITAL**
31 Union Street
Vernon, CT 06066

**MANCHESTER MEMORIAL HOSPITAL**
71 Haynes Street
Manchester, CT  06040

**LSU HEALTH BOGALUSA MEDICAL CENTER**
433 Plaza Street
Bogalusa, LA  70427

**MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS
d/b/a UNIVERSITY MEDICAL CENTER**
2000 Canal Street
New Orleans, LA  70112

**UNIVERSITY HOSPITAL & CLINICS**
2390 West Congress
Lafayette, LA  70506

**HUEY P LONG MEDICAL CENTER**
352 Hospital Boulevard
Pineville, LA  71360

**E A CONWAY MEDICAL CENTER DBA OSCHNER LSU
HEALTH - MONROE MEDICAL CENTER**
4864 Jackson Street
Monroe, LA  71202

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**OUR LADY OF THE LAKE REGIONAL**
**MEDICAL CENTER**
5000 Hennessy Boulevard
Baton Rouge, LA  70808

**LSU HEALTH SCIENCES CENTER - SHREVEPORT**
**d/b/a OSCHNER LSU SHREVEPORT - ACADEMIC**
**MEDICAL CENTER**
1541 Kings Highway
Shreveport, LA  71130

**OUR LADY OF LOURDES REGIONAL**
**MEDICAL CENTER, INC**
4801 Ambassador Caffery Parkway
Lafayette, LA  70508

**WILLIS KNIGHTON MEDICAL CENTER**
2600 Greenwood Road
Shreveport, LA  71103

**EARL K. LONG MEDICAL CENTER**
5825 Airline Highway
Baton Rouge, LA

**ST FRANCIS MEDICAL CENTER**
309 Jackson Street
Monroe, LA  71201

**W O MOSS REGIONAL MEDICAL CENTER**
1000 Walters Street
Lake Charles, LA  70607

**LEONARD J CHABERT MEDICAL CENTER**
1978 Industrial Boulevard
Houma, LA  70363

**WILLIS KNIGHTON BOSSIER HEALTH CENTER**
2400 Hospital Drive
Bossier City, LA  71111

**OUR LADY OF THE LAKE ASCENSION COMMUNITY**
**HOSPITAL - ST ELIZABETH HOSPITAL**
1125 West Highway 30
Gonzales, LA  70737

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**CENTRAL MAINE MEDICAL CENTER**
300 Main Street
Lewiston, ME  04240

**CHARLES AND VIRGINA HICKMAN HOSPITAL**
818 Riverside Avenue
Adrian, MI  49221

**ST DOMINIC-JACKSON MEMORIAL HOSPITAL**
969 Lakeland Drive
Jackson, MS  39216

**ST VINCENT CHARITY MEDICAL CENTER**
2351 East 22nd Street
Cleveland, OH  44115

**MERCY MEDICAL CENTER**
1320 Mercy Drive NW
Canton, OH  44708

**FLOWER HOSPITAL**
5200 Harroun Road
Sylvania, OH  43560

**UH REGIONAL HOSPITALS**
27100 Chardon Road
Richmond Heights, OH  44143

**FAIRVIEW HOSPITAL**
18101 Lorain Avenue
Cleveland, OH  44111

**EUCLID HOSPITAL**
18901 Lake Shore Boulevard
Euclid, OH  44119

**LUTHERAN HOSPITAL**
1730 West 25th Street
Cleveland, OH  44113

**UH BEDFORD MEDICAL CENTER**
44 Blaine Avenue
Bedford, OH  44146

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**UH CLEVELAND MEDICAL CENTER**
11100 Euclid Avenue
Cleveland, OH  44106

**SOUTH POINTE HOSPITAL**
20000 Harvard Road
Warrensville Heights, OH  44122

**CLEVELAND CLINIC**
9500 Euclid Avenue
Cleveland, OH  44195

**LAKEWOOD HOSPITAL**
14519 Detroit Avenue
Lakewood, OH  44107

**BAY PARK COMMUNITY HOSPITAL**
2801 Bay Park Drive
Oregon, OH  43616

**TEXAS HEALTH ARLINGTON
MEMORIAL HOSPITAL**
800 W. Randol Mill Road
Arlington, TX  76012

**TEXAS HEALTH HARRIS METHODIST
FORT WORTH**
1301 Pennsylvania Avenue
Fort Worth, TX  76104

**TEXAS HEALTH HARRIS METHODIST
HOSPITAL CLEBURNE**
201 Walls Drive
Cleburne, TX  76033

**TEXAS HEALTH PRESBYTERIAN
HOSPITAL KAUFMAN**
850 Ed Hall
Kaufman, TX  75142

**TEXAS HEALTH HARRIS METHODIST
HOSPITAL STEPHENVILLE**
411 N. Belknap Street
Stephenville, TX  76401

**TEXAS HEALTH PRESBYTERIAN**
**HOSPITAL  DALLAS**
8200 Walnut Hill Lane
Dallas, TX  75231

**TEXAS HEALTH HARRIS METHODIST**
**HURST-EULESS-BEDFORD**
1600 Hospital Parkway
Bedford, TX  76022

**TEXAS HEALTH PRESBYTERIAN**
**HOSPITAL PLANO**
6200 W. Parker Road
Plano, TX  75093                                                    Case No.

**TEXAS HEALTH HARRIS METHODIST**
**HOSPITAL SOUTHWEST F**
6100 Harris Parkway
Fort Worth, TX  76132

**TEXAS HEALTH PRESBYTERIAN**
**HOSPITAL ALLEN**
1105 Central Expressway North
Allen, TX  75013

        Plaintiffs,
     v.

**ROBERT F. KENNEDY, JR.,** In his Capacity as
Secretary of the U.S. Department of Health
and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

        Defendant.


## COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION

## ON MEDICARE REIMBURSEMENT

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## <u>INTRODUCTION</u>

In the text of her majority Opinion in the matter of *Becerra, Secretary of Health and Human Services v. Empire Health Foundation, for Valley Hospital Medical Center*, No. 20-1312, *infra*, involving in part an analysis of the Disproportionate Share Hospital (DSH) percentage calculation set forth in the Medicare Act (and in many aspects, applicable to the instant matter), and used to determine if a DSH Hospital may be entitled to additional Medicare reimbursement for its costs incurred in a particular fiscal year by treating a disproportionate share of low income or disabled patients, and a computation quite notably consisting of the *mere* sum of two fractions, Justice Elana Kagen reminded us over and over and over again just how complicated and indeed challenging it is to interpret the meaning, intent and application of the very words describing each component part of the two fractions (both numerator *and* denominator) can be. For instance, two **identical** words used in the same sentence can arguably have two distinct meanings. Upon presenting the exact statutory language defining the two fractions (known as the Medicare/SSI Fraction, and the Medicaid Fraction) Justice Kagen promptly comments; "With that under your belt, you might be ready to absorb the relevant statutory language (**but don't bet on it)**." (emphasis added); "That is a mouthful (and without the brackets, it's even worse;") and summing up the analysis, "That too is a lot to digest." *supra* at p.4.

The very essence of this case lies in the ongoing efforts of the Provider Reimbursement Review Board (PRRB), the agency arbiter of Hospital provider Medicare reimbursement appeals to quite deliberately complicate what is already a complex exercise for DSH Hospital providers; to consistently correctly interpret, then accurately insert each patient's in-patient days data into the formula, having to ensure compliance towards the statutory intent of the meaning of each term describing the component parts of the two fractions. Yes, that is a mouthful.

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Just how does the PRRB complicate this already extensive and work-intensive exercise? Given statutory authority under the Medicare Act, the PRRB promulgates Rules and regulations controlling the mechanism for Hospitals filing and pursuing administrative appeals that are often arduous, confusing and in the absence of absolute compliance, quite often punitive. Worse still, the Board will oftentimes apply their *own* Rules, many of which are at odds with the very meaning and intent of specific provisions of the Medicare Act, if not outright contradictory to such provisions. The oft-end result of the Board's overt insistence on compliance with each and every point set within its multitude and every increasing number of Rules and regulations is to "trip up" a Hospital's appeal efforts, eventually depriving the Hospital of the additional reimbursement adjustment that the DSH provisions of the Medicare Act were intended to provide.

## JURISDICTION AND VENUE

1.      This is a civil action brought to obtain judicial review of a final decision rendered on March 24, 2025 by the Provider Reimbursement Review Board ("PRRB" or "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"), which decision denied expedited judicial review (EJR) for the plaintiff hospitals (hereinafter "Plaintiffs" or "Hospitals"), and to vacate regulations promulgated by the Secretary of HHS, and to reverse certain determinations made by the PRRB on Medicare appeals filed by Plaintiff Hospitals. Thirty-nine Group Appeals each submitted identical requests for EJR on February 21, 2025. Each of those Group Appeals (or, cases) is identified by the PRRB Group Appeal numbers and titles set forth in Appendix A of its March 24, 2025 EJR Determination letter, a true and correct copy attached hereto as **Exhibit "B"** and is incorporated herein by reference. This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. 1331, and 28 U.S.C. § 1361. This civil action is filed within sixty (60) days of the date the Hospitals are deemed to have received the decision of the PRRB denying their requests for EJR.

2.          Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

## JURISDICTION AND VENUE

3.          This is a civil action brought to obtain judicial review of a final decision rendered on March 24, 2025 by the Provider Reimbursement Review Board ("PRRB" or "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"), which decision denied expedited judicial review (EJR) for the plaintiff hospitals (hereinafter "Plaintiffs" or "Hospitals"), and to vacate regulations promulgated by the Secretary of HHS, and to reverse certain determinations made by the PRRB on Medicare appeals filed by Plaintiff Hospitals. Thirty-nine Group Appeals each submitted identical requests for EJR on February 21, 2025. Each of those Group Appeals (or, cases) is identified by the PRRB Group Appeal numbers and titles set forth in Appendix A of its March 24, 2025 EJR Determination letter, a true and correct copy attached hereto as **Exhibit "B"** and is incorporated herein by reference. This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. 1331, and 28 U.S.C. § 1361. This civil action is filed within sixty (60) days of the date the Hospitals are deemed to have received the decision of the PRRB denying their requests for EJR.

4.          Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

## PARTIES

5.          The plaintiff Hospitals and each of their Medicare Provider Numbers are set forth below:

| Provider # CCN | Provider |
|---|---|
| 01-0045 | FAYETTE MEDICAL CENTER |
| 01-0092 | D C H REGIONAL MEDICAL CENTER |
| 05-0327 | LOMA LINDA UNIVERSITY MEDICAL CENTER |
| 07-0012 | ROCKVILLE GENERAL HOSPITAL |
| 07-0027 | MANCHESTER MEMORIAL HOSPITAL |
| 19-0001 | LSU HEALTH BOGALUSA MEDICAL CENTER |
| 19-0005 | MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS DBA UNIVERSITY MEDICAL CENTER |
| 19-0006 | UNIVERSITY HOSPITAL & CLINICS |

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

| | |
|---|---|
| 19-0009 | HUEY P LONG MEDICAL CENTER |
| 19-0011 | E A CONWAY MEDICAL CENTER DBA OSCHNER LSU HEALTH - MONROE MEDICAL CENTER |
| 19-0064 | OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER |
| 19-0098 | LSU HEALTH SCIENCES CENTER - SHREVEPORT DBA OSCHNER LSU SHREVEPORT - ACADEMIC MEDICAL CENTER |
| 19-0102 | OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC |
| 19-0111 | WILLIS KNIGHTON MEDICAL CENTER |
| 19-0122 | EARL K. LONG MEDICAL CENTER |
| 19-0125 | ST FRANCIS MEDICAL CENTER |
| 19-0161 | W O MOSS REGIONAL MEDICAL CENTER |
| 19-0183 | LEONARD J CHABERT MEDICAL CENTER |
| 19-0236 | WILLIS KNIGHTON BOSSIER HEALTH CENTER |
| 19-0242 | OUR LADY OF THE LAKE ASCENSION COMMUNITY HOSPITAL - ST ELIZABETH HOSPITAL |
| 20-0024 | CENTRAL MAINE MEDICAL CENTER |
| 23-0005 | CHARLES AND VIRGINA HICKMAN HOSPITAL |
| 25-0048 | ST DOMINIC-JACKSON MEMORIAL HOSPITAL |
| 36-0037 | ST VINCENT CHARITY MEDICAL CENTER |
| 36-0070 | MERCY MEDICAL CENTER |
| 36-0074 | FLOWER HOSPITAL |
| 36-0075 | UH REGIONAL HOSPITALS |
| 36-0077 | FAIRVIEW HOSPITAL |
| 36-0082 | EUCLID HOSPITAL |
| 36-0087 | LUTHERAN HOSPITAL |
| 36-0115 | UH BEDFORD MEDICAL CENTER |
| 36-0137 | UH CLEVELAND MEDICAL CENTER |
| 36-0144 | SOUTH POINTE HOSPITAL |
| 36-0180 | CLEVELAND CLINIC |
| 36-0212 | LAKEWOOD HOSPITAL |
| 36-0259 | BAY PARK COMMUNITY HOSPITAL |
| 45-0064 | TEXAS HEALTH ARLINGTON MEMORIAL HOSPITAL |
| 45-0135 | TEXAS HEALTH HARRIS METHODIST FORT WORTH |
| 45-0148 | TEXAS HEALTH HARRIS METHODIST HOSPITAL CLEBURNE |
| 45-0292 | TEXAS HEALTH PRESBYTERIAN HOSPITAL KAUFMAN |
| 45-0351 | TEXAS HEALTH HARRIS METHODIST HOSPITAL STEPHENVILL |
| 45-0462 | TEXAS HEALTH PRESBYTERIAN HOSPITAL  DALLAS |
| 45-0639 | TEXAS HEALTH HARRIS METHODIST HURST-EULESS-BEDFORD |
| 45-0771 | TEXAS HEALTH PRESBYTERIAN HOSPITAL PLANO |
| 45-0779 | TEXAS HEALTH HARRIS METHODIST HOSPITAL SOUTHWEST F |
| 45-0840 | TEXAS HEALTH PRESBYTERIAN HOSPITAL ALLEN |

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

6.      Defendant Robert F. Kennedy, Jr., Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy is sued in his official category.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

7.      The Medicare program was established to provide health insurance to the age and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

8.      Medicare reimburses the operating costs of short-term acute care hospital inpatient services primarily through the hospital Inpatient Prospective Payment System (IPPS). 42 U.S.C. §1395ww(d). The IPPS statute contains a number of provisions that adjust reimbursements based on Provider-specific factors. *See* 42 U.S.C. §1395ww(d)(5). This case involves the Provider-specific disproportionate share hospital (DSH) adjustment, which requires the Secretary to provide increased IPPS reimbursement to providers that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

9.      Whether a Provider qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the Provider's "disproportionate patient percentage" (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the so-called "Medicare Fraction" and Medicaid Fraction," for a Provider's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Providers whose DSH percentages meet certain thresholds receive an adjustment which results in increased IPPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

6.      The first Fraction's numerator is the number of provider's inpatient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. 42 U.S.C. § 1395ww(d)(5)(F)((vi)(I). This case involves this first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare Fraction.

7.      The second fraction's numerator is the number of Provider patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title 19 of the Social Security Act, 42 U.S.C. §1396-1 et seq., for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the Provider's inpatient days for such period. *Id*. The second fraction is frequently referred to as the Medicaid Fraction.

8.      The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and was made effective beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

9.      The Secretary implemented the DSH program through the publication of an interim final rule on May 6, 1986. 51 *Fed. Reg.* 16,772 (May 6, 1986). In the May 6, 1986 final rule, the Secretary decreed that only Medicare beneficiaries who are "recipients" of SSI, i.e., only those Medicare beneficiaries who have actually received payment, in a given month will have their inpatient hospital stay days counted in the numerator of the Medicare Fraction for that month. *Id.* at 16,777. In the August 16, 2010 final rule, the Secretary maintained that "our policy has always been to include only Medicare beneficiaries who are entitled to receive SSI benefits in the numerator of the SSI fraction." 75 *Fed. Reg*. 50042, at 50280 n.19 (Aug. 16, 2010). The Secretary's policy is that only Medicare beneficiaries who are paid SSO cash benefits for a given month are, "entitled to receive SSI benefits" for purposes of including the inpatient days associated with such beneficiaries in the

numerator of the SSI fraction (a/k/a Medicare Fraction). The Secretary does not consider beneficiaries who received non-cash SSI benefits for a particular month to be, "entitled to receive SSI benefits."  And as explained below, the Secretary's policy is to omit the inpatient days of certain Medicare beneficiaries who; (1) were entitled to be paid SSI for the month(s) of their hospital stay; and (2) at the time of a data match between SSA and CMS, were known by SSA to be entitled to SSI payment for such month(s), but, (3) had not actually received payment for such  month(s) by the time the data match was performed.

10.     The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data.

11.     To enable CMS to calculate the SSI Fraction, SSA sends CMS an annual "eligibility file" that includes information on all SSI recipients whom SSA has coded with one of three payment status codes: C01 (current pay), M01 (forced pay), and M02 (forced due). Although SSA has dozens of payment status codes, CMS's policy is that only C01, M01, and M02 indicate SSI entitlement for purposes of the numerator of the SSI Fraction. *See* 75 *Fed. Reg*. at 50,042, 50,280 (Aug. 16, 2010). Therefore, at CMS' request or direction, only those individuals with one of the three above-referenced payment status codes are listed  on the "eligibility file."

12.      SSA does not include payment status codes in the SSI eligibility file but does include monthly indicators denoting which month(s) each person received SSI payments. *See id.* at 50,276; *see also* 51 *Fed. Reg.* 31,454, 31,459 (Sept. 3, 1986) (stating that the SSI file "lists all SSI recipients for a 3-year period and denotes the months during that period in which the recipient was eligible for SSI benefits").

13.      CMS then computes the SSI fraction by matching individuals appearing in the SSA's eligibility file with its own Medicare inpatient data to identify a patient's entitlement to SSI benefits. *Pomona Valley Hosp. Med. Ctr. v. Azar*, No. CV 18-2763 (ABJ), 2020 WL 5816486, at \*2 (D.D.C. Sept. 30, 2020) (citing 75 *Fed. Reg.* at 50,281). In other words, "CMS identifies the individuals appearing in both two data sets to determine the number of patients, and the inpatient days for those patients at each hospital, for the applicable fiscal year to calculate the hospital's SSI numerator." *Id*.

14.      The data match between SSA and CMS for any given Federal fiscal year is conducted approximately 15 months after the end of that fiscal year. If, at the time the data match is performed, a Medicare beneficiary was paid SSI cash benefits for a month covered by the data match, any inpatient hospital days associated with such beneficiary will be counted in the numerator of the Medicare Fraction. For example, if a Medicare beneficiary is an inpatient in Hospital (a Medicare certified short-term acute care hospital) from April 29 -May 6, 2022 and, by the time the SSA eligibility file is constructed for that year, was paid SSI for April but not for May, the days April 29 -30 would be counted in the numerator of the Medicare Fraction, and the days May 1 -6 would not be counted.

15.      After the SSA-CMS data match is performed, CMS does not make adjustments to the Medicare Fraction based upon subsequent, retroactive corrections to the eligibility status of a Medicare beneficiary. Thus, for example, if the Medicare beneficiary filed an application for SSI based on disability on January 1, 2023 and had an inpatient stay in July, 2023, but was not, at the time of her stay, adjudicated eligible for SSI, that Medicare beneficiary would not appear on the SSA eligibility tape, and thus the days associated with her July, 2023 stay would not be counted in the numerator of Hospital's Medicare Fraction. Moreover, if six months after the data match for Fiscal Year 2023 was performed, that Medicare beneficiary was awarded SSI based on disability

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

*retroactive* to January 1, 2023, the days associated with that Medicare beneficiary's July, 2023 stay nevertheless would *not* be added to the numerator of Hospital's Medicare Fraction. In this example, at the time the data match was performed, neither SSA nor CMS knew that the Medicare beneficiary would subsequently be awarded SSI based upon disability.

16.    However, in contrast to the example given in the previous paragraph, there are situations in which; (a) a Medicare beneficiary does not receive SSI payment for a particular month, (b) is entitled to SSI payment for that month, and, at the time of the data match, is known by SSA to be so entitled, but, (c) inpatient days associated with such individual nevertheless are not counted. For example, if, for a given month, an individual does not have a bank account or is considered by SSA to need a representative payee, but no payee has yet been designated or, SSA does not have a valid address for such an individual, SSA will not make payment to that individual for that month. If the administrative reason for not making payment is not resolved by the time the SSI eligibility file is constructed, the inpatient days associated with such a beneficiary will not be included in the numerator of the Medicare Fraction because CMS requests or directs SSA to include only individuals with payment status codes C01, M01, or M02.

17.    SSA's Programs Operating Manual System (POMS) is sub regulatory guidance published by and used by SSA to implement the SSI program. Section SI 02301.201of the POMS is entitled "Description of SSI Post Eligibility (PE) Events." It states in the Introduction portion that "[t]he term 'eligible' in this subchapter means that a recipient meets all eligibility requirements for part or all of a past or current month(s)." Section SI 02301.201B.2. is entitled "Stop Payment." It explains that "[a] stop payment is an interruption in payment. It is not a loss of eligibility. Payments may be reinstated for past or current month(s) on a stop pay record regardless of the period in nonpay."

Section SI 02301.201B.2. specifically mentions the situation in which an SSI eligible individual needs a representative payee, but the SSA field office has not appointed one as a "stop payment."

18.    Under the Secretary's policy, not all individuals who are entitled to SSI have their inpatient days  included in the Medicare Fraction during the month(s) of their hospital stay, either because they are entitled to SSI but were not entitled to SSI cash payments during such month(s), or were entitled to SSI cash payments but were not paid SSI cash payments for such month(s).

19.    CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as Medicare Administrative Contractors (hereinafter, the "MAC"). MACs determine payment amounts due to the providers under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the MAC calculates the DPP, CMS computes the SSI fraction.

20.    At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The MAC reviews the cost report, determines the total amount of Medicare reimbursement due to the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

## REQUIREMENTS FOR OBTAINING BOARD JURISDICTION

**21.**    A provider or group of providers dissatisfied with the MAC's NPR(s) may obtain a hearing before the Provider Reimbursement Review Board (PRRB) or (Board) if it requests such a hearing within 180 days of the issuance of the NPR, and the amount in controversy is satisfied. 42 U.S.C. § 1395oo(a); 42 C.F.R. §405.1835(a);   There is also an amount in controversy requirement, which is $10,000 or more for a single provider appeal, and $50,000 or more for a group appeal. 42 U.S.C. § 1395oo(b); 42 C.F.R. §405.1837(b).

## REQUIREMENTS FOR GROUP APPEALS

**22.**      The Medicare Statute provides that certain appeals may or must be brought as a group

appeal. Specifically, the Statute provides that;

> The provisions of subsection (a) [with regard to single provider appeals]
> shall apply to any group of providers of services if each provider of services
> in such group would, upon the filing of an appeal (but without regard to the
> $10,000 limitation), be entitled to such a hearing, but only if the matters in
> controversy involve a common question of fact or interpretation of law or
> regulations and the amount in controversy is, in the aggregate, $50,000 or
> more.

42 U.S.C. § 1395oo(b). With regard to so-called common interest – related providers (CIRP)

appeals, the Statute states that;

> Any appeal to the Board or action for judicial review by providers which are
>
> under common ownership or control, or which have obtained a hearing under
>
> subsection (b) must be brought by such providers as a group with respect to
>
> any matter involving an issue common to such providers.

42 U.S.C. § 1395oo(f)(1).

23.      The Statute's use of the word "matters" (plural) in  42 U.S.C. § 1395oo(b) means that

Congress  allows a group appeal to involve more than one issue. Contrary to Statute the regulations,

and PRRB Rule 12.2  requires group appeals to contain a single  "matter" (singular) and thus are

contrary to the Statute and invalid.

24.      The Statute allows for such a group appeal if there is "a common question of fact or

interpretation of law or regulations" – the Statute does not require that there be only one common

question of fact or interpretation of law or regulations. Contrary to the Statute, the regulations and

the PRRB Rules require, for both optional and mandatory (CIRP group appeals that there must be a

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

"single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group." 42 C.F.R. §1837(a)(2); PRRB Rule 12.2.

25.       In the 2008 final rule promulgating section 405.1837, 73 *Fed. Reg*. 30, 190 (May 23, 2008) (2008 Final Rule), the Secretary stated that "[o]ur proposals for group appeals were made with the view that, to the extent we have discretion under the statute, we should allow appeals to be brought as group appeals so as to reduce the workload on the Board, as well as the burden on providers and intermediaries." 73 *Fed. Reg*. at 30,209. However, the Secretary incorrectly read the statutory language "a common question of fact or interpretation of law or regulations" to mean "a single common question of fact or interpretation of law or regulations." *See id*. at 30,212 ("The statute requires that a group appeal involve only a common question (singular) of fact or interpretation of law or regulations. The regulations at § 405.1837(a)(2) further specify that a group appeal involve a single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group."). Ostensibly, Congress had the same goal as the Secretary, namely, that a group appeal would be a more efficient process than separate provider appeals in reducing the Board's backlog and would reduce the financial and administrative burden on providers and Medicare contractors. Yet, the Secretary did not attempt to explain why Congress would have wanted to force a group of say, 100 providers, that all have seven issues in common, to bring seven different group appeals.

26.       The regulations permit a provider to obtain expedited judicial review on more than one legal issue in the same appeal. *See* 42 C.F.R. §405.1842(a)(2) ("Each EJR decision by the Board must include a specific jurisdictional finding on the matter(**s**) at issue, and, where the Board determines that it does have jurisdiction on the matter(**s**) at issue, a separate determination of the Board's authority to decide the legal question(**s**); §405.1842(b)(2) ("A provider or group of providers may request the

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Board to grant EJR of a specific matter or matters under appeal, or the Board on its own motion may

consider whether to grant EJR of a specific matter or matters under appeal").  The Secretary does not

explain in the 2008 Final Rule or elsewhere why he interprets the statutory language pertaining to EJR,

i.e., "**a** question of law or regulations relevant to the matters in controversy" and "**the** question of law

or regulations relevant to the matters in controversy," *see* 42 U.S.C. § 1395oo(f)(1), as permitting

multiple questions or legal issues in a request for expedited judicial review EJR), while at the same

time claiming that the statutory language pertaining to group appeals, i.e., **a** common question of fact

or interpretation of law or regulations," *must* be read as requiring that a group appeal may contain only

a *single* question or legal issue.   Nor has the Secretary offered any reason Congress would have

intended to limit EJR petitions that challenge multiple regulations to be limited to single provider

appeals.

27.        In addition, to wrongfully prohibiting providers from prosecuting group appeals with more

than one "issue," the PRRB also takes an impermissibly expansive approach as to what constitutes

separate issues. The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an "issue"

and a time limit on adding an "issue" – not on "sub-issues" or "components" of an issue.

**28.**        In this case, each of the six groups appealed a single issue, namely the calculation of the

Medicare Fraction component of the DSH DPP.  The Hospitals have multiple *reasons* why they believe

their Medicare Fractions were calculated incorrectly, but that does not change the fact that a single

adjustment and a single legal issue are involved.

## <u>REQUIREMENTS FOR OBTAINING EXPEDITED JUDICIAL REVIEW</u>

29.        The Medicare Statute provides that a provider or a group of providers may obtain expedited

judicial review (EJR) if the provider or group:

> may obtain a hearing under subsection (a) and has filed a request for such a hearing,
> such provider may file a request for a determination by the Board of its authority to

decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.

42 U.S.C. § 1395oo(f)(1). Similarly, the regulations provide that a provider the right to seek EJR of a legal question relevant to a specific matter at issue in a Board appeal if there is Board jurisdiction to conduct a hearing on the matter . . . and the Board determines it lacks the authority to decide the legal question. . . ." 42 C.F.R. §405.1842(a)(1).

42 U.S.C. § 1395oo(f)(1).

32.     The PRRB's determination that each Hospital filed its requests for EJR failing to reflect the main issues enunciated in relevant fashion in each initial appeal request is factually and legally incorrect.

33.     The Medicare Statute also provides that the PRRB may consider and grant EJR on its own motion. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §405.1842(c). In granting the PRRB the authority to grant EJR on its own motion, Congress expects the PRRB to exercise its discretion in a reasonable manner. The failure of the PRRB to grant EJR on its own motion, under the facts and circumstances of this case was a gross abuse of the PRRB's discretion.

## SPECIFIC FACTS PERTAINING TO THIS CASE

34.     On February 21, 2025, Healthcare Reimbursement Services, Inc. (HRS), as the appointed representative for the Hospitals that are the Plaintiffs in this civil action, sought EJR on behalf of the Hospitals on the sole issue of, "...whether regulation 42 C.F.R. 412.106(b)(1) is invalid by requiring a patient to be due a payment for Supplemental Security Income (SSI) for the month(s) he or she has

an inpatient stay in order for the days of such stay to be included in the numerator of the Medicare Fraction for purposes of the Disproportionate Payment Percentage of the Disproportionate Share Hospital (DSH) add-on component of Medicare Inpatient Prospective Payment System (IPPS)." *See,* §1886(d)(5)(F)(vi)(I) and (II). (and *see,* **Exhibit "A"** setting forth within that attached PDF file *each* of the thirty-nine (39) **identically** worded Group Request for Expedited Judicial Review). As correctly noted within the Board's March 24, 2025 EJR Determination Letter (**Exhibit "B"** at pgs. 2-6 ), *each* of the thirty-nine Group Appeals included in their *original* appeal request a <u>statement of issue</u> (in addition to that overarching issue set forth, above) alleging that the Board, by and through its MAC relied upon an erroneous understanding concerning the application and inclusion of SSI days in its computations, thereupon producing an erroneous calculation of the Supplemental Security Income ("SSI") percentage thus culminating in inaccurate and deflated DPP computations for each plaintiff Hospital.

35.    In its identically worded Requests for EJR for all thirty-nine (39) Group Appeals, the appointed representative reasserts the critical issue at hand concerning CMS's misapplication of the relevant statutory law set forth within the Medicare Act controlling the appropriate inclusion of certain SSI patient days for the period in question into the numerator of the Medicare/SSI Fraction as days to which a patient was *entitled* to Supplemental Security Income benefits. This in contrast to CMS's oft-expressed position that only Medicare beneficiaries who are "recipients" of SSI, that is, only those who have been *paid* SSI in a given month will have their inpatient hospital stay days counted in the numerator of the Medicare Fraction for that month. See, for example, CMS initial rulemaking implementing the DSH program. 51 *Fed. Reg.* at 16777 (May 6, 1986). CMS expressed its interpretation and application of the federal statutory scheme and reliance upon that 1986 rulemaking by thereafter promulgating the FY 2011 IPPS Rule, stating that its policy "has always been to include

only Medicare beneficiaries who are entitled to receive SSI benefits in the numerator of the SSI fraction." *See, Fed. Reg.* at 50280 n. 19. The 2011 IPPS Rule was thereafter incorporated by CMS into Ruling 1498-R. Indeed, CMS reaffirmed its misplaced policy in the matter of *Advocate Christ Medical Center v. Kennedy, Jr.* litigation currently pending an Opinion by the United States Supreme Court following oral argument. (*Advocate Christ Medical Center v. Kennedy, Jr.* No. 23-715). For purposes of the EJR, Plaintiffs reassert that main issue set forth in their Group Appeals and take the same position as the petitioner in *Advocate Christ,* namely that the inpatient days associated with individuals who were found eligible for SSI prior to or for the month(s) of their inpatient stay, and who have *not* been terminated from the SSI program by the Social Security Administration with respect to such month(s) should be included in the numerator of the Medicare Fraction.

36.      In its Group Appeals and among other assertions, Plaintiffs maintains that the FY 2011 and 1986 rules, *supra* as codified in 42 C.F.R. §412.106(b)(1) are invalid and a misapplication of Congressional intent in developing and codifying the DSH provisions under the Medicare Act. Bound in their EJR denial letters, the Requests for EJR, the Board is bound by CMS Rulings, including the 2011 IPPS rulemaking and Ruling 1498-R and because Plaintiffs are asserting that this Rule is invalid, the Board has the notion that it **does not have the authority** to award the relief  Plaintiffs seek. Because there is no argument by the Board that it suffers from a jurisdictional impediment to oversee the Group Appeals in the first instance, it should grant Plaintiffs' request for EJR expressed in its February 21, 2025 letter (**Exhibit "A"**).

37.      The Board clearly does not have the authority to decide the question of law or regulations relevant to the matters in controversy, and therefore EJR is the appropriate remedy.

38.      The Board apparently disputes Plaintiffs' basis for granting EJR, and by doing so has denied their Request for Expedited Judicial Review. **Exhibit "B"** dated March 24, 2025, *supra.*). In its denial,

the Board seeks to slice-and-dice certain elements of many of the thirty-nine appeals, stating for example, that, "the initial appeal requests did not appeal the *Advocate Christ* issue – instead they have appealed the SSI *Baystate* issue, or the *Empire* dual eligible days issue, or a combination thereof, which does not comply with the single common issue requirement for a group appeal." The Board's rationale is faulty for any number of reasons, foremost that the overarching issue serving as the basis of *each* appeal as so acknowledged by the Board in its EJR denial letter was, "whether the Secretary properly calculated the Provider's Disproportionate Share Hospital ("DSH")/Supplemental Security Income ("SSI") percentage." While it is accurate to say that there were various sub-parts which formed the basis of the main issue, it is irresponsible of and disingenuous for the Board to dispute the very gravamen of the appeals as relating to the SSI percentage.

39.       Following its dissection of each element of each Group Appeal in its EJR denial letter, **Exhibit "B",** it is not speculation of Plaintiffs' part to say that the Board's denial is based in large part upon an argument that it clearly does not have jurisdiction over all of the supposed multiple legal issues raised in the EJR. Even assuming arguendo that presumption is accurate, regulation 42 C.F.R. 405.1837(f)(2)(ii) provides that "[w]hen the appeal is found to involve more than one factual or legal question common to each provider, the Board *must* assign a separate case number to the appeal of each common factual or legal question and conduct further proceedings in the various appeals separately for each case" (emphasis added). The Board, however, did not, at any time subsequent to its February and March, 2025 denials of EJR, bifurcate the alleged "multiple" issues into separate group appeals.

40.       One must be reminded that the basis of the EJR request rests solely with the authority of the Board to decide upon the question of law or regulations relevant to the matters in controversy; i.e., whether regulation 42 C.F.R. 412.106(b)(1) is *invalid* by requiring a patient to be due a payment for SSI for the month(s) she has an inpatient stay in order for the days of such stay to be included in the

numerator of the Medicare/SSI fraction. *And see,* Section 1886(d)(5)(F)(vi)(I) and (II) of the Social Security Act. The Board's efforts to somehow invalidate any of the Group Appeals based upon an argument that "more than one issue" was included within any one Group Appeal causes the appeal to be invalid is irrelevant to the instant discussion, and as such, the Board's page-after-page description of the elements set forth within each appeal is meaningless for purposes of the EJR request. ich it is challenging and to which the Board must determine whether it is bound."

41.    Plaintiff Hospitals' EJR request identified 42 C.F.R. §412.106(b) as the regulation they were challenging for its policy of including only paid SSI days in the numerator of the Medicare Fraction. Indeed, the Hospitals argued and specified "42 C.F.R. §412.106(b)(2)(i)(B), by which CMS includes in the Medicare Fraction days 'furnished to patients who during that month were entitled to both Medicare Part A (including Medicare Advantage (Part C)) and SSI, excluding those patients who received only State supplementation.'"  It is uncontested that this regulation is the source of the Secretary's longstanding (since May 1986, 51 *Fed. Reg.* 16,772 ) policy of including only **paid** SSI days in the numerator of the Medicare Fraction, and it was disingenuous of the Board to claim that the Hospitals had not sufficiently identified the binding authority they were challenging.  The Board was well aware of the challenged policy and the source of that policy by March, 2025 and well before at the times of Notice of EJR Request filing. For example, the policy of including only paid SSI days in the numerator of the Medicare Fraction was discussed at length in the *Baystate Medical Center* four-day hearing before the PRRB, as well as in the subsequent litigation. *See Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, 28 (D.D.C. 2008), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. Nov. 7, 2008), judgment entered, 587 F. Supp. 2d 44 (D.D.C. Dec. 8, 2008). Moreover, in response to the *Baystate* litigation, in the FY 2011 IPPS final rule, the Secretary changed certain aspects of its Medicare/SSI matching process with the Social Security Administration but reiterated its longstanding policy of including only paid SSI days

in the numerator of the Medicare Fraction. *See* 75 *Fed. Reg.* at 50280-81. In November 2018, the Board was well aware of this policy and the 2011 IPPS final rule, as less than three months earlier, on July 11, 2018, in PRRB No. Case No. 10-1325GC, the Board found it was not bound by the language in the 2010 final rule, solely because it found (incorrectly) that the policy expressed in the rule was not applicable to cost years prior to the 2010 final rule.

42.       The subject Group Appeals do not involve multiple legal issues, but rather the single legal issue of whether CMS's policy of calculating the DSH PPS is wholly inaccurate pursuant to the provisions of the Medicare Act, in addition to contesting the Board definitions and inclusion of only "covered" days (i.e., days for which the patient was paid SSI) which is patently invalid and identified regulation 412.106(b)(2);  the legal authority that the Providers were challenging in its appeals.  In their appeals and again in each Request for EJRs, Plaintiffs describe at length that they believe there are multiple *reasons* or *arguments* as to why the policy and the regulation at issue are invalid, but this does not change the fact there is, but one central legal issue involved the EJR requests along with explanatory narratives.

43.       Whether the Board has jurisdiction in this case is a simple matter of knowing whether the appeal was filed timely and whether the amount in controversy was met. Plaintiffs have satisfied both these requirements, as the Board knows well. As the record before the Board (specifically, the Model G, Statement of Providers for each of the thirty-nine Groups) shows, each Provider's request for a hearing was made within 180 days of receipt of the Provider's NPR, and the amount in controversy for each Group filing their appeals. In terms of jurisdictional amount, the lowest threshold a statutory requirement, there is no dispute that each Group Appeal was well over the threshold limit of $50,000 minimum. The Board's various statements about not having "jurisdiction" over the alleged multiple issues is inaccurate, misleading and falsely untrue. The regulations and Board rules (which are

challenged here) prevent the Board considering more than one issue in a group appeal, but this is a matter of the Board's authority and manner in which to conduct a group appeal, and not a matter of "jurisdiction". The Board has jurisdiction over the Forty-one Group appeals, and despite its poor rationalization and faulty decision-making, denying each Group Appeal Request for EJR, where statutorily, it does not belong. It belongs per analysis and definition before the associated District Cour.

44.     Moreover, the Board has never taken issue with the above-stated facts in the Model G, Statement of Providers for each of the forty-one Groups, but had more than ample time.(since the first Group Appeal was filed in or about 2014). Throughout the process, the Board has implicitly acknowledged that it had jurisdiction over each of the forty-one Group Appeals; nothing ; in its Denial Letter **Exhibit "B"** would say otherwise.   .

45.     The statute provides that hospitals may obtain EJR if the Board *has* jurisdiction over their appeals (and the Board is without authority to decide a legal issue or issues)  – it does not say that hospitals may obtain EJR only after the Board *determines* that it has jurisdiction. *See* 42 U.S.C. § 1395oo(f)(1) ("if a provider of services may obtain a hearing under subsection (a) and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy").  Likewise, regulation 42 C.F.R. §405.1842(a)(1) states that "this section implements provisions in section 1878(f)(1) of the Act that give a provider the right to seek EJR of a legal question relevant to a specific matter at issue in a Board appeal *if there is Board jurisdiction to conduct a hearing on the matter*" (emphasis added). Certain regulations provide that a provider may not file a civil action unless and until the Board has *determined* that it has jurisdiction over the provider's appeal. *See, e.g.*, 42 C.F.R. §§405.1842(a)(4), 405.1842(g)(1)(v), 405.1842(g)(2), 405.1842(g)(3), 405.1877(a)(3). Such regulations, and any others that purport to prevent a provider from filing a civil action unless and until the Board has determined it

has jurisdiction, are contrary to the plain language of the statute and internally inconsistent with regulation 42 C.F.R. §405.1842(a)(1).

45.        Rule 8 of the PRRB Rules state that;

> Some issues may have multiple components. To comply with the requirements of 42 C.F.R. § 405.1835, appeal requests must specifically identify the items in dispute, and each contested component must be appealed as a separate issue and described as narrowly as possible using the applicable format outlined in Rule 7. Several examples are identified below, but these examples are not exhaustive lists of categories or issues.
> Rule 8 A. lists nine non-exclusive  "examples" of DSH sub-issues.

46.        The PRRB's determination that no more than one "issue" can be presented in a Group Appeal is a final determination and is appealable to this court under 28 U.S.C. § 1331 under the exception in *Bowen v. Michigan Academy of Family Physicians*, 476 US 667 ((1986).

## Count I

## Violation of Administrative Procedure Act

47.        Plaintiffs incorporate by reference paragraphs 1 – 46 of this Complaint.

48.        The APA provides that "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

49.        The Secretary's regulation at 42 C.F.R. § 405.1837, requiring that Group Appeals contain only a single issue are contrary to the plain language of 42 U.S.C. §1395oo(b), and is arbitrary and capricious.

50.        The Secretary's regulations that purport to prohibit a provider from seeking EJR before a court unless and until the Board has determined that it has jurisdiction over the provider's appeal are contrary to the plain language of the statute and internally inconsistent, arbitrary and capricious.

51.        PRRB Rules 12 and 13 that require there be only one issue in a group appeal are contrary to the plain language of 42 U.S.C. §1395oo(b), are based on an invalid regulation, are arbitrary and capricious, and are procedurally invalid for failure to abide by notice and comment procedures of the APA, 5 U.S.C. § 553, and notice and comment procedures of 42 U.S.C. §1395h.

52.        PRRB Rule 8, which divides an issue into subcomponents of an issue or sub-issues and considers arguments to be issues, for purposes of filing a Group Appeal is contrary to the plain language of 42 U.S.C. §1395oo(a), is arbitrary and capricious, and is procedurally invalid for failure to abide by notice and comment procedures of the APA, 5 U.S.C. § 553, and notice and comment procedures of 42 U.S.C. §1395h.

53.        The PRRB's denial of EJR on the basis there were multiple issues in the EJR petitions must be set aside because it was based on invalid rules. Moreover, its denial based upon the argument that the case upon which Plaintiffs rely, *Advocate Christ v. Kennedy* was not specifically mentioned in the text of the Group Appeals is erroneous and regardless, inconsequential to the specific SSI issue at hand.

54.        The PRRB's finding that there were multiple issues in the EJR petitions is arbitrary and capricious and not supported by substantial evidence.

55.        The PRRB's failure to grant EJR on its own motion is arbitrary and capricious.

## Count II

## Mandamus

56.         Plaintiffs exhausted their administrative remedies for purposes of mandamus jurisdiction and were owed the non-discretionary duty by the Secretary and the PRRB to issue regulations and instructions that are consistent with the Medicare Statute and apply such regulations and instructions in the adjudication of Plaintiffs' requests for EJR.

57.         The Secretary and the PRRB violated their non-discretionary duty by issuing and applying regulations and instructions that were inconsistent with the Medicare Statute.

58.         Because the PRRB found that the Group Appeals involved more than one factual or legal question common to each provider, it had the nondiscretionary duty under regulation 42 C.F.R. 405.1837(f)(2)(ii) to "assign a separate case number to the appeal of each common factual or legal question and conduct further proceedings in the various appeals separately for each case." The PRRB failed to follow such requirements of such regulation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

1. Declaring invalid and vacating regulation 42 C.F.R. § 405.1837(a)(2) and (f), and any other regulation that requires group appeals to contain only one issue, and enjoining the Secretary from applying such regulations;

2. Declaring Provider Reimbursement Review Board Rules 8, 12 and 13 procedurally and/or substantively invalid and of no legal effect;

3. Reversing the PRRB's finding that the Hospitals did not file a complete request for EJR

4. Reversing the PRRB's denial of expedited judicial review (EJR) and remanding the matter to the PRRB for a new EJR decision within 30 days of the Court's remand order; or alternatively, should the Court find the denial of EJR was proper, remanding the matter to

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

the PRRB with instructions to follow and implement the requirements of regulation 42 C.F.R. 405.1837(f)(2)(ii) within 30 days of the Court's remand order; and

5.  Awarding Plaintiffs costs and any and all such further relief as the Court may deem just and proper under the circumstances.

Dated: March 29, 2025                    Respectfully submitted,

                                         ALAN J. SEDLEY LAW CORPORATION

                                         By: /s/ Alan J. Sedley_____
                                         Alan J. Sedley, Esq. Bar# OH0017
                                         18880 Douglas, Suite 417
                                         Irvine, CA 92612
                                         Phone: 818.601.0098
                                         asedley@sedleyhealthlaw.com

                                         *Attorneys for Plaintiffs*